1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   THEODORE RICHARD BERKEY,              )   Case No. SA CV 12-1762-PJW
                                           )
11                   Plaintiff,            )
                                           )   MEMORANDUM OPINION AND ORDER
12           v.                            )
                                           )
13   CAROLYN W. COLVIN,                     )
     ACTING COMMISSIONER OF THE            )
14   SOCIAL SECURITY ADMINISTRATION,       )
                                           )
15                   Defendant.            )
     _____)

16

17                            I. INTRODUCTION

18        Plaintiff appeals a decision by Defendant Social Security

19   Administration ("the Agency"), denying his application for Disability

20   Insurance benefits ("DIB").  He claims that the Administrative Law

21   Judge ("ALJ") erred when she: (1) found that he did not have a severe

22   liver impairment; (2) discounted the opinions of the treating and

23   examining doctors; and (3) concluded that he was not credible.  For

24   the following reasons, the Court concludes that the ALJ erred and

25   remands the case to the Agency for further proceedings consistent with

26   this memorandum opinion and order.

27

28

1

II.   SUMMARY OF PROCEEDINGS

2    In April 2010, Plaintiff applied for DIB, claiming that he was

3 disabled due to Hepatitis B and C, high blood pressure, dizziness,

4 joint pain, mood swings, and depression.  (Administrative Record

5 ("AR") 24, 222-23, 254.)  His application was denied initially and on

6 reconsideration, after which he requested and was granted a hearing

7 before an ALJ.  (AR 142-46, 148-60.)  Following the hearing in

8 December 2011, the ALJ issued a decision, finding that Plaintiff was

9 not disabled and denying benefits.  (AR 24-33.)  Plaintiff appealed to

10 the Appeals Council, which denied review.  (AR 1-5.)  This action

11 followed.

12

III. DISCUSSION

13 A.   The Step-Two Determination

14    Plaintiff claimed that he suffered from Hepatitis B and C, the

15 manifestations of which precluded him from working.  The ALJ found

16 that that there was no objective evidence to support this claim and,

17 concluded, therefore, that it was not a severe impairment.  (AR 27.)

18 Plaintiff contends that this was error.  For the following reasons,

19 the Court remands this issue to the Agency for further analysis.

20    Under 20 C.F.R. § 416.921, a "non-severe impairment" is one that

21 does not significantly limit a person's physical or mental capacity to

22 perform basic work-related functions.  The determination that an

23 impairment is "non-severe" is "'a de minimis screening device [used]

24 to dispose of groundless claims.'"  *Edlund v. Massanari*, 253 F.3d

25 1152, 1158 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273,

26 1290 (9th Cir. 1996)).  Such a finding is only appropriate when the

27 "medical evidence establishes only a slight abnormality . . . which

28 would have no more than a minimal effect on an individual's ability to

2

1   work . . .. "  Social Security Ruling 85-28; *see also Bowen v.*
2   *Yuckert*, 482 U.S. 137, 154 (1987).

3        The evidence before the ALJ established that Plaintiff exhibited
4   elevated levels of liver enzymes (AST and ALT) in four blood tests
5   between December 2009 and February 2011.  (AR 383, 522-24.)   In
6   addition, when Plaintiff's platelets were analyzed twice during this
7   same period, his platelet counts were low.  (AR 522-23.)   The medical
8   expert testified that, though this evidence could indicate that
9   Plaintiff suffered from Hepatitis, he could not confirm this diagnosis
10  without test results showing the presence of Hepatitis antigens or
11  antibodies in the blood.  (AR 124.)

12       Consistent with the medical expert's testimony, the ALJ
13  determined that there was insufficient evidence to find that Plaintiff
14  suffered from Hepatitis.  (AR 27.)   Less than three months later,
15  Plaintiff had his blood tested and it proved positive for Hepatitis C
16  antibodies.  (AR 531.)   This evidence was submitted to the Appeals
17  Council, but the Appeals Council did not find that it supported a
18  change to the ALJ's finding that Plaintiff's Hepatitis was not a
19  severe impairment.  (AR 1-7.)

20       The Appeals Council erred in reaching this conclusion.   It
21  appears to be undisputed that Plaintiff (who is now deceased) suffered
22  from Hepatitis C.   The medical expert testified that the elevated
23  liver enzymes could be consistent with such a diagnosis but that that
24  diagnosis could not be confirmed without a blood test showing that
25  there were Hepatitis antibodies in the blood.  (AR 124.)   The April
26  2012 blood test confirmed the existence of Hepatitis C antibodies,
27  thus, also confirming the existence of Hepatitis.  (AR 531.)   The
28

3

1  Appeals Council's decision that this new evidence did not require a
2  change to the ALJ's finding was wrong.

3      The Agency disagrees.  It argues that there was no evidence of
4  Hepatitis B or C antibodies "during the relevant period," presumably
5  the period ending with the ALJ's decision on January 30, 2012.  (Joint
6  Stip. at 10.)  It appears that this argument is premised on the
7  supposition that Plaintiff contracted Hepatitis between January 30,
8  2012 and April 4, 2012.  There is no evidence to support such a
9  notion.  In fact, the evidence supports the opposite conclusion.  The
10  objective evidence that is in the record--i.e., the elevated liver
11  enzyme levels and the treatment notes from Plaintiff's doctors, which
12  were based on their examinations--supports Plaintiff's view that the
13  antibody evidence is nothing more than confirmation of what was
14  already apparent from the record.  Absent evidence that the April 2012
15  test results should be confined to the post-January 30, 2012 period,
16  they are relevant.  *See Brewes v. Comm'r, Soc. Sec. Admin.*, 682 F.3d
17  1157, 1162 (9th Cir. 2012) (explaining administrative record includes
18  evidence submitted to and considered by the Appeals Council that
19  relates to period before ALJ's decision); *see also* 20 C.F.R.
20  § 404.970(b) ("If new and material evidence is submitted, the Appeals
21  Council shall consider the additional evidence only where it relates
22  to the period on or before the date of the administrative law judge
23  hearing decision.").

24      The ALJ also relied on the fact that Plaintiff had not sought
25  treatment for Hepatitis to conclude that Plaintiff's condition was not
26  severe.  (AR 27.)  The record does not support this finding, either.
27  In the first place, Plaintiff was being treated by a doctor who had
28  recognized as early as 2007 that he was suffering from Hepatitis and

1  was treating him for this and his other afflictions.  (AR 403.)  In

2  the second, Plaintiff's treating records reflect that he did not

3  receive additional treatment for Hepatitis because he could not afford

4  it.  (AR 385, 464, 490.)  As such, the ALJ should not have relied on

5  the lack of treatment in analyzing this impairment.  *See Gamble v.*

6  *Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("[A] disabled claimant

7  cannot be denied benefits for failing to obtain medical treatment that

8  would ameliorate his condition if he cannot afford that treatment . .

9  .."").

10      The Agency points to the fact that Plaintiff did not quit

11 drinking when advised to by his treating doctor to do so and argues

12 that this is evidence that his Hepatitis was not a severe impairment.

13 (Joint Stip. at 13.)  The Court will not rely on this explanation,

14 however, because the ALJ did not rely on it.  *See Bray v. Astrue,* 554

15 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of

16 administrative law require us to review the ALJ's decision based on

17 the reasoning and factual findings offered by the ALJ--not post hoc

18 rationalizations that attempt to intuit what the adjudicator may have

19 been thinking.").

20      Having concluded that the Agency erred, the Court must also

21 address the issue of whether the error was harmless.  The Court finds

22 on this record that it was not.  An error at step two is harmless when

23 it is clear that the ALJ accounted for any resulting limitations

24 caused by the allegedly non-severe impairment in a later step.  *Lewis*

25 *v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *see also Stout v.*

26 *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) (noting

27 that an error is harmless if it is "inconsequential to the ultimate

28 non-disability determination.").  Here, it is not clear whether the

5

1  ALJ did.  Although the medical expert testified that he had considered
2  Listing 5.05 for chronic liver disease in his analysis (AR 122), he
3  apparently did not incorporate--or even consider--any limitations,
4  such as memory loss, malaise, and chronic fatigue, that Plaintiff's
5  treating and examining doctors identified as resulting from liver
6  disease.  (AR 462, 466, 490.)  Nor did the ALJ.  (AR 29-32.)  As such,
7  the error was not harmless and remand on this issue is warranted.[1]
8  *See Stout*, 454 F.3d at 1055.
9  B.   The Doctors' Opinions
10      Plaintiff contends that the ALJ erred when she rejected the
11 opinions of his treating doctor Harris and examining doctor Ovalle,
12 who opined that Plaintiff was severely limited in his ability to
13 function.  The ALJ rejected Dr. Harris' opinion--because it "sharply
14 contrast[ed]" with the medical evidence--and Dr. Ovalle's, in part,
15 because it was not consistent with the record as a whole.  (AR 31-32.)
16 In light of the fact that the Court has concluded that the medical
17 evidence established that Plaintiff suffered from Hepatitis, which was
18 consistent with these doctors' findings, this issue, too, is remanded
19 for further consideration.
20 C.   The Credibility Determination
21      Plaintiff argues that the ALJ erred in concluding that he was not
22 credible.  For the following reasons, the Court finds that the ALJ
23 failed to give adequate reasons for rejecting Plaintiff's testimony.
24      ALJs are tasked with judging the credibility of witnesses.  In
25 making credibility determinations, they may employ ordinary

26 ─────────────────────

27      [1]  Plaintiff also underwent an ultrasound in April 2012, which
   confirmed that he suffered from cirrhosis of the liver.  (AR 534.)
28 This, too, should be considered by the Agency on remand.

credibility evaluation techniques. *Smolen*, 80 F.3d at 1284.  Where a claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce the symptoms alleged and there is no evidence of malingering, the ALJ can only reject the claimant's testimony for specific, clear, and convincing reasons that are supported by substantial evidence in the record. *Id.* at 1283-84; *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that he suffered from constant pain in his lower back, hips, and legs. (AR 131.)  As a result, he could only sit for twenty minutes at a time and then had to get up and move around for at least twenty minutes.  He also reported that he had to lie down for at least two hours out of an eight-hour day and took two to three naps a day because pain prevented him from sleeping well at night. (AR 129-30.)  Plaintiff claimed that he also had memory problems.  (AR 132.)  In a statement filled out by his wife and submitted on his behalf, she reported that he could not sit or stand "for long" and could only walk approximately one hundred yards before needing to stop and rest for ten minutes.  (AR 277.)

The ALJ discounted these claims because: (1) Plaintiff's daily activities were inconsistent with his alleged limitations; and (2) although Plaintiff reported a history of depression and anxiety, he "denied ever seeing a psychiatrist, being hospitalized for psychiatric treatment, [] receiving any psychiatric treatment[,] including psychotherapy," and declined counseling when his treating doctor strongly advised it.  (AR 31.)

The ALJ's first reason is not clear and convincing.  Plaintiff reported that he prepared soup and sandwiches three times a week and gave food and water to his pets.  (AR 273-74.)  He also claimed that

7

he was able to take out the trash, sweep the porch for five minutes at a time, dust for ten minutes at a time, and do one load of laundry a week.  (AR 274.)  He reported that he went outside every day but could no longer garden, mow the lawn, or work on cars and motorcycles and that he could drive and shop for groceries for 30 minutes at a time. (AR 134, 275.)

These activities are not inconsistent with Plaintiff's claims that he was unable to sustain full-time work.  As such, they do not constitute a sufficient basis for questioning his testimony that he was unable to work.  *See*, *e.g.*, *Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (overruling ALJ's finding that claimant's testimony that she could not work was undermined by her reported daily activities where extent of daily activities did not suggest she performed them a substantial part of the day or that they would transfer to work setting).

As to the ALJ's second reason for questioning Plaintiff's testimony--that he did not seek psychiatric treatment despite his allegations of disabling anxiety and depression--this is not supported by the record, either.  Plaintiff's treating doctor, Dr. Harris, treated him with medication for anxiety (among other things) for almost two years (from April 2009 to March 2011), which, apparently, controlled his symptoms.  (AR 384-389, 392-95, 436, 443-44.) Beginning in March 2011, and continuing to November 2011, Dr. Harris noted increased anxiety and depression, panic attacks, and poor improvement with medication and encouraged Plaintiff to seek counseling.  (AR 443-44, 490-91, 498-99.)  In November 2011, Plaintiff rejected Dr. Harris' advice to seek counseling.  (AR 499.)

Thus, though there was a brief period before the January 2012 decision in which Plaintiff elected not to treat his anxiety as recommended, it appears from the record that, throughout the majority of the relevant period, he was being treated for it.  In the context of this case, where Plaintiff allegedly suffered from a mental/ emotional impairment, the Court is hard pressed to agree with the ALJ that Plaintiff's failure to follow his doctor's advice and seek specialized care for his condition is sufficient cause to discredit his entire testimony.  *Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("'[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  As such, this issue, too, is remanded for further consideration.[2]

### IV.   CONCLUSION

For the reasons set forth above, the ALJ's decision is reversed and the case is remanded to the Agency for further consideration.

IT IS SO ORDERED.

DATED:  September 26, 2013.

*Patrick J. Walsh*

PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Social Security\BERKEY, 1762\Memo Opinion and Order.wpd

---

[2]  The parties informed the Court in the Joint Stipulation that Plaintiff died in January 2013 and have both discussed and relied on Plaintiff's death certificate, which was purportedly attached to the Joint Stipulation.  The death certificate was not attached to the Joint Stipulation and the Court has not considered it in reaching its decision.

9